**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, INDEPENDENT PETROLEUM ASSOCIATION OF AMERICA, and NATIONAL FOREIGN TRADE COUNCIL,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Respondent. | Case No. 12-1398 |

# PETITIONERS' REPLY IN SUPPORT OF EMERGENCY MOTION TO DETERMINE JURISDICTION

The Securities and Exchange Commission agrees with Petitioners that this Court has jurisdiction to review the Rule at issue in this case pursuant to its authority to review any and all "order[s]" of the Commission. *See* Commission Br. 1-2 (citing Section 25(a), 15 U.S.C. § 78y(a)). However, Oxfam International has sought leave to intervene in the case, or in the alternative, to participate as *amicus curiae*, and has lodged a brief with the Court opposing jurisdiction. Petitioners file this Reply to respond to Oxfam's Opposition.*

1. Petitioners explained in their Motion to Determine Jurisdiction that this Court has authority to review the Rule under either Section 25(a) (governing "order[s]") or Section 25(b) (15 U.S.C. § 78y(b)). Section 25(b) provides for review in the courts of appeals of any "rule" promulgated by the Commission under certain specified sections of the Exchange Act, including Sections 15(c)(5) and (6). Petitioners' Br. 7-8. In the final Rule, the Commission invoked Section 15 of the Exchange Act as one basis for its authority to issue the Rule, but did not refer to any specific subsection. *See* Disclosure of Payments by Resource Extraction Issuers, 77 Fed. Reg. 56,365, 56,417/3 (Sept. 12, 2012). On its face, therefore, the Rule is ambiguous as to what subsection of Section 15 applies, and under longstanding authority, any ambiguity as to whether this Court may review an agency rule must be

* Petitioners do not object to Oxfam filing its Opposition because Petitioners do not oppose Oxfam's motion to intervene in this appeal, or in the alternative, to participate

resolved in favor of jurisdiction. *See* Petitioners' Br. 5-7 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), and other authorities). This presumption in favor of appellate court review furthers the goal of "[n]ational uniformity" in the interpretation of federal regulations, *Nat'l Res. Def. Council v. EPA*, 673 F.2d 400, 405 n.15 (D.C. Cir. 1982), and avoids unnecessary duplication of efforts by district courts and courts of appeals, *see Lorion*, 470 U.S. at 744.

Oxfam invites the Court to conclude that Section 15(d)(1), not (c)(5) or (c)(6), is the specific provision of Section 15 that the Commission intended to invoke when it promulgated the Rule. *See* Oxfam Br. 4; *see also* Commission Br. 2. But the *Lorion* presumption prevents this Court from filling gaps left by an agency. Rather, where a statute's "application to the agency action in question is 'ambiguous,'" the courts of appeals must apply the presumption in favor of appellate jurisdiction. *Nat'l Auto. Dealers Ass'n v. F.T.C.*, 670 F.3d 268, 270 (D.C. Cir. 2012); *see also Exportal Ltda v. United States*, 902 F.2d 45, 49 (D.C. Cir. 1990) (where it becomes necessary for courts of appeals to "recur to rules of statutory construction" to determine jurisdiction, the presumption favoring jurisdiction applies). Here, the final Rule on its face is ambiguous; thus, the presumption applies, and jurisdiction lies in this Court.

Oxfam relies on this Court's dismissal order in *International Swaps & Derivatives Ass'n v. CFTC*, No. 11-1469, 2012 U.S. App. LEXIS 1282 (D.C. Cir. Jan.

---

as *amicus curiae*.

20, 2012), to contend that the Court cannot exercise jurisdiction because the Commission's Rule did not explicitly refer to subsections 15(c)(5) or (c)(6). It notes that the Commodity Futures Trading Commission ("CFTC"), in listing the authorities for issuance of the rule at issue in that case, referred to Section 2 of the Commodity Exchange Act ("CEA"), which includes one subsection that permits direct review in the court of appeals. Oxfam Br. 5-6. But the Petitioners in *International Swaps* did not rely on that specific subsection as a basis for appellate jurisdiction in opposing CFTC's motion to dismiss, and therefore, the Court had no occasion to consider the question. Moreover, that CEA subsection refers to actions taken by the *Board of Governors of the Federal Reserve* (or the CFTC by delegated authority) to direct certain boards of trade to set margin levels. *See* 7 U.S.C. § 2(a)(1)(C)(v)(VI). The provision did not give the CFTC a more general rulemaking authority, or indeed, any authority at all unless delegated by the Board of Governors. By contrast, Sections 15(c)(5), (c)(6), and (d)(1) of the Exchange Act all confer general authority to regulate the designated subject matter "in the public interest"—and the Commission did not explain which subsection it was invoking when it referred to Section 15.

2. Apart from Section 25(b), Section 25(a) vests this Court with jurisdiction to review all "final order[s]" of the Commission, and does not provide any limitation on the types of "orders" that confer appellate jurisdiction. That is important because, since 1977, this Court has held that judicial review provisions that refer to "orders"

also permit challenges to "any agency action capable of review on the basis of the administrative record," including rules. *Inv. Co. Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 551 F.2d 1270, 1278 (D.C. Cir. 1977); *see also* Petitioners Br. 10-11 (collecting authorities). In light of this Court's consistent practice of interpreting "orders" to encompass certain rulemaking challenges, the reference to "order[s]" in Section 25(a) is at least ambiguous. Again, any ambiguity as to whether this Court has authority to review a rule must be resolved in favor of jurisdiction. *Nat'l Auto. Dealers Ass'n*, 670 F.3d at 270.

Oxfam resists this conclusion because Section 25(b) of the Exchange Act makes reference to specific rules that may be reviewed by a court of appeals, and therefore would be superfluous, Oxfam contends, if Section 25(a) permitted challenges to all SEC regulations. Oxfam Br. 7. But the *Investment Company Institute* definition of "orders" would not permit immediate review of *all* rulemaking challenges—only those that, like Petitioners' challenge to the Extractive Industries Rule, are capable of resolution on the administrative record. 551 F.2d at 1278. Moreover, as the Commission observes, Section 25(b) was enacted before this Court adopted its modern, expansive interpretation of the term "orders" in *Investment Company Institute*, which in Oxfam's words "discard[ed] the final remaining vestiges" of the "bright line between orders and rules." Oxfam Br. 9. Congress has acquiesced in this interpretation for the past 35 years: While it has made amendments to Section 25

twice, in 1986 and 1990, and amended other provisions of the Exchange Act on numerous occasions, at no point has it modified the provision providing for judicial review of "orders" or expressed disagreement with how that term has been interpreted by the courts. *See, e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-703 (1979) (history of congressional acquiescence may be considered in determining legislative intent); *Barnhart v. Walton,* 535 U.S. 212, 217-20 (2002).

To be sure, the Commission amended Section 25(b) in 1990 to make specific provision for judicial review of rules enacted pursuant to Section 9(h)(2) of the Exchange Act. *See* Oxfam Br. 10. But Section 9(h)(2) was included as part of the Market Reform Act, Pub. L. 101-432, 104 Stat. 975 (Oct. 16, 1990), and was intended to make clear that the Commission had authority to regulate security futures products, notwithstanding anything in the Commodity Exchange Act. *See* 15 U.S.C. § 78i(h)(2). Thus, the amendment to Section 25(b) made clear that courts of appeals had authority to review Commission rules relating to security futures products, notwithstanding the more limited appellate court jurisdiction under the CEA, as discussed above. That is the *only* occasion since 1975 in which Congress has added a statutory provision to the list in Section 25(b)—likely because Congress understood that petitioners already could challenge rules as "order[s]" under Section 25(a) as long as the challenge could be resolved on the administrative record.

3. Finally, contrary to what Oxfam argues (at 10-11), Petitioners' First

Amendment challenge to the provision in the Dodd-Frank Act authorizing the Rule (15 U.S.C. § 78m(q)) and to the Rule itself does not prevent this Court's immediate review. Rather, the Supreme Court has held that a party seeking judicial review of agency action ordinarily may "draw in[to] question the constitutionality of [the underlying statute]" in the same proceeding. *Flemming v. Nestor*, 363 U.S. 603, 607 (1960). In *Preseault v. ICC*, 853 F.2d 145 (2d Cir. 1988), *aff'd*, 494 U.S. 1 (1990), for example, the Second Circuit exercised original jurisdiction over a constitutional challenge to the statute that authorized the agency action under review. *See id.* at 149. The court of appeals reasoned that, because it already had authority to review the agency order, "it would be nonsensical to require a bifurcated challenge" in which the petitioner would seek relief from the agency order in the court of appeals while challenging the statute's constitutionality in district court. *Id.*

*Time Warner Entertainment Co. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996), which Oxfam cites in its brief, actually further illustrates that this Court has jurisdiction over Petitioners' First Amendment challenge. In that case, a judicial review provision gave the courts of appeals exclusive jurisdiction to review agency orders. Plaintiffs sued in district court to mount a facial First Amendment challenge to the statute; they did *not* challenge an agency order. This Court held that the challenge to the statute was properly presented first in district court, "*so long as* [it] is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute." *Id.*

at 965 (emphasis added). Here, Petitioners *do* contest "the validity of agency action taken pursuant to the challenged statute," *id.*, as well as challenging the statute itself. Therefore, jurisdiction over the First Amendment challenge to the statute lies here. The posture of the case is similar to the Second Circuit *Preseault* case discussed above, not the *Time Warner* case, and this Court may address the constitutionality of both the Extractive Industries Rule and the underlying statute itself. *See Preseault*, 853 F.2d at 149.

Dated: October 31, 2012

Respectfully submitted,


/s/ Eugene Scalia
Eugene Scalia
*Counsel of Record*
Thomas M. Johnson, Jr.
Ashley S. Boizelle
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
*Counsel for Petitioners*

*Of Counsel*
Harry M. Ng
Peter C. Tolsdorf
American Petroleum Institute
1220 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 682-8500
*Counsel for Petitioner American Petroleum Institute*

*Of Counsel*
Robin S. Conrad
Rachel Brand
National Chamber Litigation Center, Inc.
1615 H Street, N.W.
Washington, D.C. 20062
Telephone: (202) 463-5337
*Counsel for Petitioner Chamber of Commerce of the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing Reply in Support of Petitioners' Emergency Motion to Determine Jurisdiction to be served via ECF this 31st day of October, 2012. A copy of this Reply has also been served on the following parties by mail:


Howard M. Crystal
Meyer Glitzenstein & Crystal
1601 Conn. Ave., N.W. Suite 700
Washington, DC 20009-1056
Direct: 202-588-5206
hcrystal@meyerglitz.com
Fax: 202-588-5049

Richard Herz
rick@earthrights.org
Jonathan G. Kaufman
jonathan@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K St. NW Suite 401
Washington, DC 20009
Phone: 202-466-5188
Fax: 202-466-5189

Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K St. NW Suite 401
Washington, DC 20009
Phone: 202-466-5188 x103
Fax: 202-466-5189
marco@earthrights.org

Richard J. Rosensweig
rrosensweig@goulstonstorrs.com
Derek B. Domian
ddomian@goulstonstorrs.com
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
T: (617) 482-1776
F: (617) 574-4112


*/s/ Eugene Scalia*
Eugene Scalia